# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INEX-INTEREXPORT BELGRADE,<br>14 OCTOBER KRUSEVAC, IMT AD<br>BELGRADE, DP FAP FAMOS, AND MFK<br>CORPORATION | ) )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) ) | Case No. 1:07CV00638 (RBW) |
| v. | ) ) | |
| THE REPUBLIC OF NICARAGUA<br>Licenciado Samuel Santos López<br>Ministerio De Relaciones Exteriores<br>Del Antiguo Cine Gonzáles 1 c.<br>Al Sur sobre Avenida Bolivar<br>Managua, Nicaragua | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| BANCO CENTRAL DE NICARAGUA<br>An Agency and Instrumentality of the<br>Republic of Nicaragua<br>KM. 7 Carretera Sur<br>Apartado Postal 2252-2253<br>Managua, Nicaragua | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) )<br>) | |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), Defendants

The Republic of Nicaragua and Banco Central de Nicaragua respectfully move the Court for an

order dismissing the Complaint of Inex-Interexport Belgrade, 14 October Krusevac, IMT AD

Belgrade, DP FAP Famos Belgrade and MFK Corporation Limited on the following grounds:

(i)      lack of subject matter jurisdiction under the Foreign Sovereign Immunities act, 28

U.S.C. §§ 1330(a), 1604, and 1605(a) and therefore also lack of personal

jurisdiction under 28 U.S.C. § 1330(b);

(ii)    failure to state a claim for relief.

The grounds for this Motion are set forth in the accompanying Statement of Points and

Authorities.  A proposed Order is attached.

Dated: June 29, 2007

Respectfully submitted,


By:  /s/ Matthew D. Slater
      Matthew D. Slater (D.C. Bar # 386986)
      Cleary Gottlieb Steen & Hamilton LLP
      2000 Pennsylvania Avenue, N.W.
      Washington, D.C. 20006-1801
      Telephone:  (202) 974-1500
      Facsimile:  (202) 974-1999

      Jonathan I. Blackman
      Christopher P. Moore
      Cleary Gottlieb Steen & Hamilton LLP
      One Liberty Plaza
      New York, New York 10006
      Telephone:  (212) 225-2000
      Facsimile:  (212) 225-3999

      Attorneys for the Defendants The Republic of
      Nicaragua and Banco Central de Nicaragua

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INEX-INTEREXPORT BELGRADE, ) <br> 14 OCTOBER KRUSEVAC, IMT AD ) <br> BELGRADE, DP FAP FAMOS, AND MFK ) <br> CORPORATION ) <br> ) <br>            Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> THE REPUBLIC OF NICARAGUA ) <br> Licenciado Samuel Santos López ) <br> Ministerio De Relaciones Exteriores ) <br> Del Antiguo Cine Gonzáles 1 c. ) <br> Al Sur sobre Avenida Bolivar ) <br> Managua, Nicaragua ) <br> ) <br> BANCO CENTRAL DE NICARAGUA ) <br> An Agency and Instrumentality of the ) <br> Republic of Nicaragua ) <br> KM. 7 Carretera Sur ) <br> Apartado Postal 2252-2253 ) <br> Managua, Nicaragua ) <br> ) <br>           Defendants. ) | Case No. 1:07CV00638 (RBW) |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT
## OF THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Matthew D. Slater
D.C. Bar No. 386986
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801
Telephone:  (202) 974-1500
Facsimile:  (202) 974-1999

Jonathan I. Blackman
Christopher P. Moore
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

Attorneys for the Defendants The Republic of
Nicaragua and Banco Central de Nicaragua

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ........................................................................ 2

ARGUMENT ......................................................................................... 4

I.    THIS COURT LACKS JURISDICTION UNDER THE
FOREIGN SOVEREIGN IMMUNITIES ACT ....................................... 4

II.   ANY DISPUTE OVER THE PROMISSORY NOTES IS
REQUIRED TO BE ARBITRATED .................................................. 10

III.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............... 11

     A.    Plaintiffs Have Failed to Allege Any Facts Showing That
They Have Standing to Bring These Claims .................................. 12

     B.    The Complaint Fails To State Any Claim Against
The Republic Of Nicaragua ...................................................... 13

     C.    Plaintiffs' Claim Is Time-Barred ............................................... 14

CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

9 U.S.C. § 3 .................................................................................................... 11

9 U.S.C. §§ 201-208 ........................................................................................ 11

28 U.S.C. § 1330(a) ......................................................................................... 5

28 U.S.C. § 1330(b) ......................................................................................... 6

28 U.S.C. § 1603(a) ......................................................................................... 5

28 U.S.C. § 1603(b) ......................................................................................... 5

28 U.S.C. § 1603(e) ......................................................................................... 6

28 U.S.C. § 1604 .............................................................................................. 5

28 U.S.C. § 1605(a) ......................................................................................... 5

28 U.S.C. § 1605(a)(2) ..................................................................................... 6, 7-8

**Cases**

Aktieselskabet AF 21 v. Fame Jeans, Inc.,
Civ. No. 06-585 (RCL), 2007 WL 1655877 (D.D.C. June 7, 2007) ................................. 12

Argentine Republic v. Amerada Hess Shipping Corp.,
488 U.S. 428 (1989) .......................................................................................... 4-5

Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank,
251 F. Supp. 2d 126 (D.D.C. 2003) ......................................................................... 8

*Bell Atl. Corp. v. Twombly,
127 S. Ct. 1955 (2007) ....................................................................................... 11, 12

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,
462 U.S. 611 (1983) .......................................................................................... 14

Foremost-McKesson, Inc. v. Islamic Republic of Iran,
905 F.2d 438 (D.C. Cir. 1990) .............................................................................. 2

Page(s)

Goodman Holdings v. Rafidain Bank,
26 F.3d 1143 (D.C. Cir. 1994) ......................................................................    8-9

Green v. Intersolutions, Inc.,
Civ. A. No. 07-298 (EGS), 2007 WL 1656280 (D.D.C. June 6, 2007).............    13

Hicks v. Ass'n of Am. Med. Colls.,
Civ. A. No. 07-00123 (ESH), 2007 WL 1577841 (D.D.C. May 31, 2007).........    12-13

Huntley v. Bortolussi,
667 A.2d 1362 (D.C. 1995) ..........................................................................    14

I.T. Consultants, Inc. v. Islamic Republic of Pakistan,
351 F.3d 1184 (D.C. Cir. 2003) ....................................................................    9

Khan v. Parsons Global Servs., Ltd.,
480 F. Supp. 2d 327 (D.D.C. 2007) ..............................................................    11

LNC Invs. v. Republic of Nicaragua,
115 F. Supp. 2d 358 (S.D.N.Y.),
aff'd, 228 F.3d 423 (2d Cir. 2000)..................................................................    5, 14

Mar. Int'l Nominees Establishment v. Republic of Guinea,
693 F.2d 1094 (D.C. Cir. 1982) ....................................................................    8

Millicom Int'l Cellular, S.A. v. Republic of Costa Rica,
995 F. Supp. 14 (D.D.C. 1998) .....................................................................    9

N.Y. State Bar Ass'n v. FTC,
276 F. Supp. 2d 110 (D.D.C. 2003) ..............................................................    2

Nemariam v. Fed. Democratic Republic of Ethiopia,
400 F. Supp. 2d 76 (D.D.C. 2005),
aff'd, No. 05-7178, 2007 WL 1791098 (D.C. Cir. June 22, 2007)...................    2

Papasan v. Allain,
478 U.S. 265 (1986)......................................................................................    12

Peterson v. Royal Kingdom of Saudi Arabia,
332 F. Supp. 2d 189 (D.D.C. 2004),
aff'd, 416 F.3d 83 (D.C. Cir. 2005) ...............................................................    5

Rattigan v. Gonzales,
Civ. A. No. 04-2009 (ESH), 2007 WL 1577855 (D.D.C. May 31, 2007).........    13

Page(s)

*Republic of Argentina v. Weltover, Inc.,
504 U.S. 607 (1992)................................................................................................ 5, 8, 9

Saudi Arabia v. Nelson,
507 U.S. 349 (1993)................................................................................................ 5

Shoreham Hotel Ltd. P'ship v. Wilder,
866 F. Supp. 1 (D.D.C. 1994) ................................................................................ 14

Strategic Techs. PTE, Ltd. v. Republic of China (Taiwan),
Civ. A. No. 05-2311 (RMC), 2007 WL 1378492 (D.D.C. May 10, 2007) ....................... 2

*Termorio S.A. E.S.P. v. Electrificadora del Atlantico S.A. E.S.P.,
421 F. Supp. 2d 87 (D.D.C. 2006),
aff'd, No. 06-7058, 2007 WL 1515069 (D.C. Cir. May 25, 2007)................................... 8, 9, 14

Vanover v. Hantman,
77 F. Supp. 2d 91 (D.D.C. 1999) ........................................................................... 2

Verlinden B.V. v. Cent. Bank of Nigeria,
488 F. Supp. 1284 (S.D.N.Y. 1980),
aff'd, 647 F.2d 320 (2d Cir. 1981),
rev'd on other grounds, 461 U.S. 480 (1983) ...................................................... 5-6

*Zedan v. Kingdom of Saudi Arabia,
849 F.2d 1511 (D.C. Cir. 1988) ............................................................................. 7, 8

**Other Authorities**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
art. 2(3), June 10, 1958, 21 U.S.T. 2517.............................................................. 10-11

International Monetary Fund and International Development Association,
Nicaragua: Enhanced Heavily Indebted Poor Countries (HIPC) Initiative
Completion Point Document (2004), available at
http://siteresources.worldbank.org/INTDEBTDEPT/CompletionPointDocuments/202510
20/Nicaragua-E-Compl.pdf...................................................................................... 4

World Bank, Nicaragua Country Brief (updated September 2006), available at
http://web.worldbank.org/WBSITE/EXTERNAL/COUNTRIES/LACEXT/NICARAGU
AEXTN/0,,contentMDK:20214837~pagePK:141137~piPK:141127~theSitePK:258689,0
0.html ....................................................................................................................... 4

Defendants The Republic of Nicaragua (the "Republic" or "Nicaragua") and Banco Central de Nicaragua (the "Central Bank") submit this statement of points and authorities in support of their motion to dismiss the Complaint.

## PRELIMINARY STATEMENT

This lawsuit is a perfunctory effort to seek relief against a foreign state and its central bank in defiance of this Court's lack of subject matter jurisdiction. Plaintiffs, a collection of Serbian companies and their Ugandan assignee, seek damages for non-payment under promissory notes that are at least 20 years old issued by the Central Bank to a Yugoslav bank. On the face of these notes, and of the Credit Agreement under which they were issued, no performance was required to occur in the United States, and the Credit Agreement provides that all disputes thereunder are to be settled by binding arbitration in France under French law. This Court therefore lacks subject matter jurisdiction over this action under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq., and if it did have subject matter jurisdiction, it would in any event be required to refer these claims to arbitration under the arbitration provisions of the governing agreement.

Moreover, even if this Court could entertain this action, which it cannot, it would be required to dismiss Plaintiffs' claims for a multitude of reasons. Plaintiffs lack standing on the face of the Complaint to bring any claim under the notes or the underlying Credit Agreement, since they were neither parties to those contracts, nor allege, even in conclusory fashion, any assignment or any other basis for asserting claims thereunder. There is also no factual basis whatever alleged in the Complaint for any claim against the Republic, which on its face was not a party to the promissory notes or the Credit Agreement. Finally, all of Plaintiffs' claims are barred on their face by the statute of limitations.

1

# STATEMENT OF FACTS[1]

Plaintiffs Inex-Interexport Belgrade, 14 October Krusevac, IMT AD Belgrade, DP FAP Famos Belgrade and MFK Corporation Ltd. (collectively "Plaintiffs") claim to hold 190 promissory notes (the "Promissory Notes") issued by defendant Central Bank and payable to Udruzena Beogradska Banka ("Banka") or to its order, pursuant to a credit agreement entered into between the Central Bank and Banka on October 4, 1983 (the "Credit Agreement"). [2] Compl. ¶ 17. The Promissory Notes were issued between September 10, 1984 and January 17, 1987. All of the Promissory Notes were due and payable as of September 29, 1991, in Belgrade, Yugoslavia. See Compl. Ex. A. The Complaint provides no explanation for Plaintiffs' failure to assert claims based on the Promissory Notes for more than 15 years.

Plaintiffs Inex-Interexport Belgrade, 14 October Krusevac, IMT AD Belgrade and DP FAP Famos Belgrade (the "Serbian Plaintiffs") are allegedly corporations organized under the laws of Serbia and Montenegro, and collectively claim to be the "assignees and the successors in interest" of a company named Interexport OOUR Metali ("Metali"). Compl. ¶ 9. Plaintiff MFK Corporation Ltd., a corporation allegedly organized under the laws of Uganda, claims to be the assignee for collection and attorney in fact for the Serbian Plaintiffs. Id. ¶ 6.

---

[1]    This statement of facts is taken from the Complaint, and from the documents annexed to the Complaint or referred to therein.

[2]    A motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction under the FSIA requires the Court to look beyond the face of the pleadings to determine whether jurisdiction exists. See Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C. Cir. 1990); see also Strategic Techs. PTE, Ltd. v. Republic of China (Taiwan), Civ. A. No. 05-2311 (RMC), 2007 WL 1378492, at *2 (D.D.C. May 10, 2007). Likewise, in deciding a motion to dismiss under Rule 12(b)(6), the court may consider a document that is referred to in the complaint and that is central to plaintiff's claim without converting the motion to one for summary judgment. See Nemariam v. Fed. Democratic Republic of Ethiopia, 400 F. Supp. 2d 76, 80 (D.D.C. 2005), aff'd, No. 05-7178, 2007 WL 1791098 (D.C. Cir. June 22, 2007); Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999); see also N.Y. State Bar Ass'n v. FTC, 276 F. Supp. 2d 110, 114 (D.D.C. 2003). The Court may therefore consider the Promissory Notes and the Credit Agreement referenced therein on both the Rule 12(b)(1) and Rules 12(b)(6) motions. Here all 190 promissory notes attached as Exhibit A to the Complaint state that each promissory note is "issued pursuant to the terms of a Credit Agreement dated as of October 4, 1983 among the [Central Bank] and Udruzena Belogradska Banka, and is entitled to the benefits thereof."

The purpose of the Credit Agreement, which governs the Promissory Notes, was to finance the purchase price under certain contracts for the export of goods to be made between Yugoslav and Nicaraguan companies.  Credit Agreement § 2.1.[3]  For each such contract, the Central Bank would issue a promissory note payable to Banka.  In turn, Banka would pay the Yugoslav companies exporting the goods.  Id. § 3.1.  The notes and underlying Credit Agreement are exclusively between the Central Bank and Banka, and the Contract contains no allegations (nor could it) that the Central Bank had any contract with the Yugoslav seller.  The Central Bank's obligation to pay Banka under the Promissory Notes was not subject to the performance of the underlying sale contract.  Id. § 8.3.  Like the Promissory Notes, the Credit Agreement provides for payment to be made in Beograd (i.e. Belgrade).  Id. § 3.1.

The Credit Agreement and Promissory Notes contain no reference whatever to any obligation by the Republic of Nicaragua.  Plaintiffs allege that the Central Bank acted as an agent of Nicaragua, Compl. ¶ 11, but no such agency relationship appears in the Credit Agreement or the Notes, which are solely contracts between the Central Bank and Banka.  Plaintiffs also allege, in equally conclusory fashion, that Nicaragua has agreed, by virtue of its participation in international debt reduction programs, to satisfy the obligations of the Central Bank (id. ¶ 21) but do not provide the Court with any factual allegation or explanation why participation in such reduction programs would have this alleged consequence.

The Credit Agreement contains an arbitration clause providing that "[a]ll disputes arising out of this Agreement shall finally be settled according to the Reconciliation and Arbitration Rules of the International Chamber of Commerce [(the "ICC")] in Paris by one or more arbitrators appointed in accordance with the Rules. . . .  The Arbitration shall be held in Paris and shall be governed under the material law of France."  Credit Agreement §§ 14.01 &

---

[3]    A Copy of the Credit Agreement is attached hereto as Exhibit A.

14.02.  The Complaint provides no allegation that could support Plaintiffs' apparent position that they are entitled to ignore this provision and proceed in this or any other judicial forum.

For reasons including protracted civil war and natural and man-made disasters, Nicaragua is the second poorest country in Latin America and the Caribbean, and as such the country has pursued debt assistance through various programs, including the Highly Indebted Poor Countries (HIPC) initiative with bilateral and multilateral creditors, Paris Club negotiations with bilateral creditors, and commercial debt reduction operations with commercial lenders.  See World Bank, Nicaragua Country Brief (updated September 2006)[4]; International Monetary Fund and International Development Association, Nicaragua: Enhanced Heavily Indebted Poor Countries (HIPC) Initiative Completion Point Document 29 (2004).[5]  The instant action is apparently an attempt to by-pass this process, but it is apparent on the face of the Complaint and the operative contracts that this Court lacks subject matter jurisdiction to entertain it, that Plaintiffs lack standing to sue, that there is no basis for a claim against the Republic under the Promissory Notes or Credit Agreement, and that the claims are barred on their face by the statute of limitations.

## ARGUMENT

## I.     THIS COURT LACKS JURISDICTION UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT.

Because Nicaragua is a foreign state, the Foreign Sovereign Immunities Act (the "FSIA") provides the sole basis for obtaining subject matter jurisdiction over claims brought against it in the courts of the United States.  See Argentine Republic v. Amerada Hess Shipping

---

[4]     Available at:
http://web.worldbank.org/WBSITE/EXTERNAL/COUNTRIES/LACEXT/NICARAGUAEXTN/0,,contentMDK:20214837~pagePK:141137~piPK:141127~theSitePK:258689,00.html

[5]     Available at:
http://siteresources.worldbank.org/INTDEBTDEPT/CompletionPointDocuments/20251020/Nicaragua-E-Compl.pdf

Corp., 488 U.S. 428, 434 (1989); see also 28 U.S.C. §§ 1604, 1330(a).  Under the FSIA, foreign

states such as Nicaragua enjoy immunity from the jurisdiction of United States courts "unless

one of several statutorily defined exceptions [to sovereign immunity] applies."  Republic of

Argentina v. Weltover, Inc., 504 U.S. 607, 610-11 (1992) (citing 28 U.S.C. § 1604); see also

Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) ("a foreign state is presumptively immune

from the jurisdiction of United States courts; unless a specified exception applies, a federal court

lacks subject-matter jurisdiction over a claim against a foreign state"); 28 U.S.C. § 1605(a)

(listing immunity exceptions).  Where, as here, the status of the defendant as a foreign state is

undisputed, see Compl. ¶ 7 ("Republic of Nicaragua . . . is a foreign state"), plaintiff bears the

burden of showing that the sovereign is not immune from suit.  See Peterson v. Royal Kingdom

of Saudi Arabia, 332 F. Supp. 2d 189, 195 (D.D.C. 2004) ("Once a foreign-sovereign defendant

asserts immunity, the plaintiff bears the burden of producing evidence to show that there is no

immunity and that the court therefore has jurisdiction over the plaintiff's claims.") (citing

Daliberti v. Republic of Iraq, 97 F. Supp. 2d 38, 42 (D.D.C. 2000)), aff'd, 416 F.3d 83 (D.C. Cir.

2005).

      The Central Bank – as "an agency or instrumentality of a foreign state," see

Compl. ¶¶ 7 & 8[6] – is likewise presumptively immune from suit under the FSIA unless one of

the statutory exceptions applies.  28 U.S.C. § 1603(a); see also LNC Invs. v. Republic of

Nicaragua, 115 F. Supp. 2d 358, 366 (S.D.N.Y.) (Central Bank is an instrumentality of

Nicaragua under FSIA), aff'd, 228 F.3d 423 (2d Cir. 2000); Verlinden B.V. v. Cent. Bank of

Nigeria, 488 F. Supp. 1284 (S.D.N.Y. 1980) (Nigeria's central bank was an agency or

---

[6]     Under FSIA Section 1603(b) "an agency or instrumentality of a foreign state" is defined as "any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country."  28 U.S.C. § 1603(b).

instrumentality of a foreign state within the meaning of the FSIA), aff'd, 647 F.2d 320 (2d Cir.

1981), rev'd on other grounds, 461 U.S. 480 (1983).

The only exception to immunity to suit relied upon by Plaintiffs here is the

"commercial activity" exception under Section 1605(a)(2), which provides that: "(a) A foreign

state shall not be immune from the jurisdiction of courts of the United States or of the States in

any case . . . (2) in which the action is based upon a commercial activity carried on in the United

States by the foreign state; or upon an act performed in the United States in connection with a

commercial activity of the foreign state elsewhere; or upon an act outside the territory of the

United States in connection with a commercial activity of the foreign state elsewhere and that act

causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  However, while the

Complaint alleges in entirely conclusory fashion that Plaintiffs' claims are "based on a

commercial activity carried on in the United States by Defendants," see Compl. ¶ 14,[7] it fails to

allege any facts upon which the Court could find that the commercial activities exception

applies, and the text of the Promissory Notes and the Credit Agreement make clear that no such

facts exist.  The Complaint therefore must be dismissed for lack of subject matter jurisdiction.[8]

For FSIA jurisdictional purposes "'commercial activity carried on in the United

States by a foreign state' means commercial activity carried on by such state and having

substantial contact with the United States."  See 28 U.S.C. § 1603(e).  The legislative history of

Section 1605(a)(2) provides guidance on what constitutes "substantial contact" with the United

States by listing the following examples:  "'commercial transactions performed in whole or in

---

[7]      The jurisdictional allegations of the Complaint are limited to paragraph 14, which simply repeats the statutory language of § 1605(a)(2), without a single allegation of fact.

[8]      Under the FSIA, personal jurisdiction over a foreign state exists only as to claims over which there is subject matter jurisdiction.  28 U.S.C. § 1330(b).  Since plaintiffs have failed to allege any facts supporting the exercise of subject matter jurisdiction, this Court also lacks personal jurisdiction over the defendants.

part in the United States, import-export transactions involving sales to, or purchases from, concerns in the United States, business torts occurring in the United States, and an indebtedness incurred by a foreign state which negotiates or executes a loan agreement in the United States, or which receives financing from a private or public lending institution located in the United States—for example, loans, guarantees, or insurance provided by the Export-Import Bank of the United States.'" See Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1513 (D.C. Cir. 1988) (quoting H.R. Rep. No. 94-1487, at 17 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6615-16).

        The instant complaint contains no factual allegations whatever of any commercial activities of either the Central Bank or the Republic "in the United States" within the meaning of the FSIA, much less any allegation that Plaintiffs' claims are "based upon" any commercial activities by either the Central Bank or the Republic in this country. To be sure, the issuance of the Promissory Notes pursuant to the Credit Agreement was "commercial activity," Compl. ¶ 11, but the Complaint is absolutely devoid of any allegation that that commercial activity occurred "in the United States," as the FSIA requires.

        To the contrary, there is absolutely no connection between the facts upon which this action is allegedly based and the United States. The Promissory Notes and the governing Credit Agreement are between two non-United States entities (a Serbian bank and a Nicaraguan state instrumentality), the Promissory Notes call for payment to be made in Belgrade in the then-Yugoslavia (not the United States), and the Credit Agreement likewise provides for payments to be made in Beograd (i.e., Belgrade) and for all disputes to be settled by ICC arbitration in Paris under French law. None of this involves any nexus to the United States.

        Nor are Plaintiffs' claims "based upon . . . an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. §

1605(a)(2).  It is "crystal clear" in this Court that for this second prong of the "commercial activity" exception to apply, the act(s) by the foreign state performed in the United States "'are limited to those which in and of themselves are sufficient to form the basis of a cause of action.'" Zedan, 849 F.2d at 1514 (citation omitted); see also Mar. Int'l Nominees Establishment v. Republic of Guinea, 693 F.2d 1094, 1104 (D.C. Cir. 1982).  Here, the Complaint contains no allegation of any "act performed in the United States" by the Central Bank or the Republic that is the basis of Plaintiffs' cause of action, nor could it do so, since Plaintiffs' claims are based on the Central Bank's alleged failure to repay loans to a Serbian bank under Promissory Notes that required repayment in Belgrade, Yugoslavia.

Finally, the Complaint fails to allege any relevant commercial activity involving Defendants "that . . . causes a direct effect in the United States," under the third prong of Section 1605(a)(2), and none exists.  The purpose of the "direct effects" test is to establish a legally significant nexus between the defendant state's alleged commercial activity and the United States.  See Termorio S.A. E.S.P. v. Electrificadora del Atlantico S.A. E.S.P., 421 F. Supp. 2d 87, 96 (D.D.C. 2006) ("There is not a sufficient nexus between the Agreement and the United States . . . to sustain a direct effect in the United States from defendant's alleged breach of the Agreement"), aff'd, No. 06-7058, 2007 WL 1515069 (D.C. Cir. May 25, 2007).  In the context of a breach of contract claim, there must be non-performance of a contractual obligation required to be performed in the United States, such as non-payment where the United States is the contractually designated place of payment.  Weltover, 504 U.S. at 617-19.

The direct effects test in this Circuit therefore "require[s] a clause in a contract mandating the fulfillment of contractual obligations *in the United States*," Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank, 251 F. Supp. 2d 126, 134 (D.D.C. 2003); see also Goodman Holdings v.

Rafidain Bank, 26 F.3d 1143 (D.C. Cir. 1994) (direct effects test not met where U.S. was not designated as place of performance); Termorio, 421 F. Supp. 2d at 95-98; Millicom Int'l Cellular, S.A. v. Republic of Costa Rica, 995 F. Supp. 14, 22 (D.D.C. 1998) ("A contract claim based upon a breach constitutes a 'direct effect' if the foreign state breached obligations that the *foreign state itself* was required to perform in the United States.") (emphasis added). Plaintiffs have alleged no facts to support jurisdiction here under the "direct effect" prong, nor could they, since the place of payment of the promissory notes is Belgrade, not the United States.

Presumably recognizing this dispositive fact, Plaintiffs have tried to elide it by alleging, in entirely conclusory fashion, that "Plaintiffs' Predecessor duly and properly demanded that payment be made in the United States," Compl. ¶ 13. This perfunctory allegation is insufficient as a matter of law under the terms of the Promissory Notes and the Credit Agreement. A "direct effect" in the United States of non-payment exists where the plaintiff has a *contractual right* to demand payment in this country. See, e.g., Weltover, 504 U.S. at 619 (plaintiff had right to designate New York as place of performance for defendant state's contractual obligations); I.T. Consultants, Inc. v. Islamic Republic of Pakistan, 351 F.3d 1184 (D.C. Cir. 2003) (although place of payment was not specified in original contract documents, plaintiff sent defendant letter specifying that place of payment should be Virginia and defendant agreed). Here, Plaintiffs have no such right and allege no such right: the Promissory Notes and the Credit Agreement provide on their face for payment by the Central Bank to Banka in Belgrade, and contain no provisions permitting Banka to require payment anywhere else.

In sum, Plaintiffs have failed to allege any facts supporting jurisdiction under the commercial activity exception of the FSIA (or any other exception) and the relevant contractual

documents defeat any such claim.  This Court therefore lacks subject matter jurisdiction and must dismiss the Complaint.

II.     **ANY DISPUTE OVER THE PROMISSORY NOTES IS REQUIRED TO BE ARBITRATED.**

While the absence of subject matter jurisdiction requires dismissal of the Complaint, if the Court were permitted to entertain it, the Court would still be required to dismiss this action because the contracts under which Plaintiffs purport to sue all require disputes to be resolved by binding arbitration.

The Central Bank issued each one of the Promissory Notes pursuant to the Credit Agreement and "subject to the terms and [ ] entitled to the benefits thereof."  <u>See</u> Compl. Ex. A. The Credit Agreement in turn contains an arbitration and choice of law clause providing that: "All disputes arising out of this Agreement shall finally be settled according to the Reconciliation and Arbitration Rules of the International Chamber of Commerce in Paris by one or more arbitrators appointed in accordance with the Rules."  Credit Agreement § 14.01.  It also provides that any such "Arbitration shall be held in Paris and shall be governed under the material law of France."  <u>Id.</u> § 14.02.  Plaintiffs do not—because they cannot— provide any basis for bringing suit in this Court for alleged breach of the Promissory Notes, in direct contravention of the requirement to arbitrate.

Therefore, assuming it had subject matter jurisdiction over Plaintiffs' breach of contract claims, the Court would be required to enforce this arbitration clause.  <u>See</u> Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. 2(3), June 10, 1958, 21 U.S.T. 2517 (the "New York Convention") ("The court of a Contracting State . . . *shall*, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement

is null and void, inoperative or incapable of being performed.") [9] (emphasis added); 9 U.S.C. §§ 201-208 (implementing the New York Convention as Chapter 2 of the Federal Arbitration Act). See Khan v. Parsons Global Servs., Ltd., 480 F. Supp. 2d 327, 339 (D.D.C. 2007) ("Once a court finds that the arbitration agreement falls under the N.Y. Convention, it is compelled to order arbitration unless it finds that the arbitration agreement itself is 'null and void, inoperative or incapable of being performed.'") (quoting the New York Convention art. 2(3)). Plaintiffs, who seek to enforce the Promissory Notes issued under the Credit Agreement, are necessarily bound by the terms of that Agreement, including the agreement to arbitrate, and they have alleged no basis on which the arbitration agreement could be avoided. Accordingly, even if the Court had subject matter jurisdiction, it would in any event be unable to entertain Plaintiffs' claims, which were brought in violation of the arbitration provisions of the contract under which they purport to sue.[10]

## III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

While the Court need not and cannot entertain Plaintiffs' claims, if it were to do so, they should in any case be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As the Supreme Court recently made clear earlier in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Id. at 1964-65 (citations and internal quotation marks omitted).

---

[9]    The parties to the Convention include the United States, Nicaragua and Serbia and Montenegro.

[10]    In the unlikely event the Court determines it possesses jurisdiction over plaintiffs' claims, defendants therefore request, in the alternative, that the Court refer the matter to arbitration and stay or dismiss the present action pending the outcome of such arbitration pursuant to § 3 of the Federal Arbitration Act. See 9 U.S.C. § 3. Indeed, given the fact that the Credit Agreement provides for arbitration, this can be the only possible outcome of this case short of dismissal for lack of subject matter jurisdiction.

See also Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation".).[11]  Plaintiffs' conclusory allegations are subject to dismissal under this standard on three bases:  they fail to allege any facts, as opposed to legal conclusions, that if true would give them standing to sue for breach of the Promissory Notes; they fail to allege any facts, as opposed to legal conclusions, to support any claim against the Republic; and their claims are barred on their face by the statute of limitations.

    A.    **Plaintiffs Have Failed to Allege Any Facts Showing That They Have Standing to Bring These Claims.**

        The Complaint fails on its face to allege a contractual relationship between Plaintiffs and Defendants sufficient to support Plaintiffs' claims.  Although the Serbian Plaintiffs allege that they are assignees and successors in interest of Metali, Compl. ¶ 9, the Promissory Notes are in fact payable to Banka, *not* Metali.  Indeed, the name "Interexport OOUR Metali" is mentioned nowhere in the Promissory Notes or in the Credit Agreement.  There is no allegation whatever in the Complaint that Metali ever became the beneficiary of such notes by assignment or otherwise.  Nor is there any indication in the text of the Promissory Notes attached to the Complaint that would suggest they were properly transferred to Metali, or any endorsement of the Promissory Notes to Metali (or to Plaintiffs).  On these facts, Plaintiffs' conclusory assertion that they are "holders in good faith of the promissory notes" is insufficient as an allegation of standing under Twombly, requiring the dismissal of their Complaint.  See Aktieselskabet AF 21 v. Fame Jeans, Inc., Civ. No. 06-585 (RCL), 2007 WL 1655877, at *2  (D.D.C. June 7, 2007) (factual allegations asserted in a complaint "'must be enough to raise a right to relief above the speculative level'") (quoting Twombly, 127 S. Ct. at 1964-1965); See also Hicks v. Ass'n of

---

[11]      In Twombly, the Court expressly rejected the previous Rule 12(b)(6) pleading standard of Conley v. Gibson, 355 U.S. 41 (1957).  See Twombly, 127 S. Ct. at 1969.

Am. Med. Colls., Civ. A. No. 07-00123 (ESH), 2007 WL 1577841, at *2 (D.D.C. May 31, 2007); Rattigan v. Gonzales, Civ. A. No. 04-2009 (ESH), 2007 WL 1577855, at *6 (D.D.C. May 31, 2007).

**B.    The Complaint Fails To State Any Claim Against The Republic Of Nicaragua.**

Just as Plaintiffs have failed to allege standing because they are not parties to the Promissory Notes or the underlying Credit Agreement, they have also failed to allege any factual basis for holding the Republic liable under these instruments. Plaintiffs' conclusory allegations that the Central Bank issued these notes as an "agent" for the Republic, Compl. ¶ 11, that the Republic is "jointly responsible" with the Central Bank for payment, id. ¶ 21, or that "[b]y virtue of its participation in international debt reduction programs, Nicaragua has agreed to satisfy the obligations of its agencies and political subdivisions, including Banco Central," id. ¶ 21 – none of which asserts any supporting facts whatever – are patently insufficient under Twombly to satisfy their pleading burden.

Under Twombly, "[a] complaint must present enough facts to state a claim to relief that is plausible on its face, and above the speculative level." See Green v. Intersolutions, Inc., Civ. A. No. 07-298 (EGS), 2007 WL 1656280, at *2 (D.D.C. June 6, 2007) (emphasis added) (internal quotation marks omitted). Here, Plaintiffs manifestly fall short of these requirements: their allegations of "agency" and "joint responsibility" are inconsistent with the plain language of the Promissory Notes and Credit Agreement, neither of which has the slightest suggestion of any such relationship or obligations. Nor is their conclusory allegation regarding the Republic's debt restructuring supported by any facts whatsoever. Plaintiffs have therefore failed, as a matter of law, to allege any facts that would support their attempt to hold the

Republic responsible for the Central Bank's obligations under the promissory notes.[12] See Shoreham Hotel Ltd. P'ship v. Wilder, 866 F. Supp. 1, 4 (D.D.C. 1994) (finding failure to state a claim where plaintiff failed to adequately plead that defendants were parties to breached contract).

### C.    Plaintiffs' Claim Is Time-Barred.

Finally, the face of the Complaint makes clear that Plaintiffs' claim is time-barred.  In the District of Columbia, courts apply the law of the forum to determine if a claim is barred by the statute of limitations, including in cases arising under the FSIA.  Termorio, 421 F. Supp. 2d at 96.  The statute of limitations for a promissory note in the District of Columbia is three years.  Huntley v. Bortolussi, 667 A.2d 1362, 1363 (D.C. 1995) ("Under D.C. Code § 12-301 (1981), an action on a [promissory] note is governed by a three year statute of limitations, unless it constitutes 'an instrument under seal' within the purview of § 12-301(6).") (referencing D.C. Code § 12-301 (2006)).  Plaintiffs' claims are based upon 190 promissory notes, all of which were due on or before September 29, 1991.  Since the alleged non-payment occurred over fifteen years ago, the statute of limitations has run, and Plaintiffs' Complaint must be dismissed.

Accordingly, while the Court need not (and indeed cannot) reach these issues because it lacks subject matter jurisdiction over this action, if it were to do so, Plaintiffs' Complaint should nevertheless be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state an actionable claim.

---

[12]    It is black letter law that under First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611 (1983) ("Bancec"), the Central Bank, as a separate juridical entity, is deemed to be presumptively separate from the Republic, and neither is legally responsible for the other's obligations to third parties.  Plaintiffs have not even attempted to allege facts on which the Central Bank's separate legal identity could be disregarded under the "veil piercing" principles set forth in Bancec, and could not do so.  See LNC Invs., 115 F. Supp. 2d at 363-66.

## **CONCLUSION**

For all of the foregoing reasons, the Complaint should be dismissed.


Dated: Washington, D.C.
　　　　June 29, 2007

　　　　　　　　　　　　　　Respectfully submitted,



　　　　　　　　　　　　By:　/s/ Matthew D. Slater
　　　　　　　　　　　　　　Matthew D. Slater (D.C. Bar # 386986)
　　　　　　　　　　　　　　Cleary Gottlieb Steen & Hamilton LLP
　　　　　　　　　　　　　　2000 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　Washington, D.C. 20006-1801
　　　　　　　　　　　　　　Telephone:  (202) 974-1500
　　　　　　　　　　　　　　Facsimile:  (202) 974-1999

　　　　　　　　　　　　　　Jonathan I. Blackman
　　　　　　　　　　　　　　Christopher P. Moore
　　　　　　　　　　　　　　Cleary Gottlieb Steen & Hamilton LLP
　　　　　　　　　　　　　　One Liberty Plaza
　　　　　　　　　　　　　　New York, New York 10006
　　　　　　　　　　　　　　Telephone:  (212) 225-2000
　　　　　　　　　　　　　　Facsimile:  (212) 225-3999

　　　　　　　　　　　　　　Attorneys for the Defendants The Republic of
　　　　　　　　　　　　　　Nicaragua and Banco Central de Nicaragua

CERTIFICATE OF SERVICE

I, Erika J. Davis, managing clerk at Cleary Gottlieb Steen & Hamilton LLP, hereby

certify that:

On June 29, 2007, a copy of the foregoing Motion to Dismiss and accompanying papers

was served by electronic transmission through the Court's CM/ECF System on the following

parties:

> Philip M. Musolino
> Musolino & Dessel
> 1615 L Street, N.W., Suite 440
> Washington, D.C. 20036
> pmusolino@musolinoanddessel.com
> Attorney for the Plaintiffs Inex-Interexport
> Belgrade, 14 October Krusevac, IMT AD
> Belgrade, DP FAP Famos Belgrade and
> MFK Corporation Ltd.
>
> Sylvia J. Rolinski
> Danielle M. Espinet
> Rolinski & Suarez, LLC
> 14915 River Road
> Potomac, Maryland 20854
> srolinski@rolinski.com
> Attorney for the Plaintiffs Inex-Interexport
> Belgrade, 14 October Krusevac, IMT AD
> Belgrade, DP FAP Famos Belgrade and
> MFK Corporation Ltd.

Dated: June 29, 2007                          /s/ Erika J. Davis
                                                  Erika J. Davis

# Exhibit A

CREDIT AGREEMENT
between




# UDRUŽENA BEOGRADSKA BANKA, BEOGRAD

## and

# THE CENTRAL BANK, REPUBLIC OF NICARAGUA




**ON CREDITING THE EXPORT OF GOODS FROM THE SFR OF YUGOSLAVIA TO THE REPUBLIC OF NICARAGUA**

CREDIT AGREEMENT

This Agreement is made on _1 de Octubre de 1983_ between:
UDRUŽENA BEOGRADSKA BANKA, Beograd /hereinafter called as: Udru-
žena Banka/

and

THE CENTRAL BANK, REPUBLIC OF NICARAGUA /hereinafter called as:
Bank/

In order to promote the trade of goods between the Socialist
Federative Republic of Yugoslavia and the Republic of Nicaragua
through the contracts on export of goods and services made bet-
ween Yugoslav Work organizations and enterprises from Nicaragua,
aimed at exports to the REPUBLIC OF NICARAGUA, the Parties here-
to agreed as follows:

Article 1.

DEFINITIONS

1.1. The following terms and expressions shall have the same me-
aning in this Agreement:

Udružena Banka:          shall mean Udružena Beogradska banka and bank:
                         - members of Udružena Beogradska Banka.

Bank:                    shall mean the CENTRAL BANK OF THE REPUBLIC
                         OF NICARAGUA.

| | |
|---|---|
| Request for inclusion: | shall mean the application of the Bank submitted to Udružena Banka in the form of the Annex "A" for financing under this Agreement. |
| Mode of approval: | shall mean approval for the specific contract in the form of the Annex "B" to this Agreement signed in the name of Udružena Banka. |
| The approved contract: | shall mean the contract between Yugoslav exporter and importer from Nicaragua approved by Udružena Banka prior to 1. XI 1984. |
| Buyer: | shall mean any enterprise of the Republic of Nicaragua which concluded the approved contract. |
| Yugoslav goods: | shall mean goods, equipment and complete plants produced in Yugoslavia. |
| Services: | shall mean Supplier's services rendered for deliveries of Yugoslav goods delivered by Yugoslav Suppliers. |
| Promissory Notes: | shall mean Promissory Note issued by the Bank pursuant to this Agreement. |
| Delivery date: | shall mean in connection with the contract on delivery of goods or equipment, the date of the Bill of Lading. |
| Date of putting into operation: | shall mean in connection with the contract on delivery of complete plants, the date when the Supplier, as per the terms of the contract, is obliged to put the plant into operation, i.e. the date specified in the agreement in principle. |

Supplier:  shall mean Yugoslav work organization with which the Buyer had concluded the approved contract.

Letter of instructions:  shall mean the letter of the Bank addressed to Udružena Banka in the form of the Annex "C" to this Agreement.

1.2. Unless the context requires otherwise, the terms and expressions used herein in singular shall have the same meaning when used in plural and vice versa.

## Article 2.

## PURPOSE AND AMOUNT OF FINANCING

2.1. For the purpose of facilitating the purchase on credit of Yugoslav goods on FOB prices by buyers from Nicaragua on terms and conditions to be concluded between suppliers and buyers, Udružena Banka shall make available to the buyers from Nicaragua, credit facilities of up to US$ 10.000.000.- / ten million only/.

2.2. Credit shall cover the delivery of the goods based on C and F prices to Nicaraguan port, subject to the utilisation of Yugoslav ships for transport.

2.3. The facilities can be utilised only if Udružena Banka approves the commercial contract on demand of the Bank, prior to 1.XI 1984.

## Article 3.

## PROMISSORY NOTES

3.1. The Bank shall issue Promissory Notes for each approved contract payable in US Dollars in Beograd to the order of Udružena Banka. The Notes shall be issued for the value of principal and interest separately and shall be undated. The Bank



shall place in safe custody the Notes with Udružena Banka.
The Notes may be released in accordance with the Letter of
Instructions given as Annex "C" to this Agreement.

3.2. The Bank shall pay all taxes or withholdings as prescribed
under the regulations of the Republic of Nicaragua to make
the Promissory Notes due and effective or otherwise valid
in the Republic of Nicaragua

3.3. The Notes signed in the name and on behalf of the Bank shall
be legally valid and binding.

3.4. In case that the value of the delivery varies from the value
of the contract and the Notes issued, the final amount of the
Notes shall be determined by replacing the last Notes covering
principal and interest.

3.5. The Notes paid shall be returned to the Bank.

## Article 4.

### ACCOUNT

4.1. Udružena Banka and the Bank shall establish current account
relations as per the separate arrangement between those two
Institutions. The accounts shall be maintained in US Dollars.

## Article 5.

### INTEREST

5.1. Interest shall be calculated on the debit balance of the
account mentioned under Article 4 of this Agreement and shall
become due and payable by the Bank in US Dollars in Beograd,
together with the principal of the credit. In case that due
dates are not the business days in Beograd, then the due
date shall fall on the next business day in Beograd.



5.2. Interest shall be calculated at the rate as per article
6.1. of this Agreement.

5.3. Interest shall be calculated as follows:

   – for the contracts on complete plants, equipment or goods
   from the date of each delivery or the date of the Invoice
   on the services rendered.

5.4. All the amounts of interest accrued up to the due date of
the first instalment shall be paid together with the first
instalment.

## Article 6.

## CONDITIONS OF CREDITING OF THE APPROVED CONTRACTS

6.1. Each purchase shall be the subject of a sale – purchase con-
tract concluded between the buyer and the supplier. The fo-
llowing terms and conditions shall apply to each contract:

| Description of export transactions | Repayment terms |
|---|---|
| 1. Serial machines and accessories from the machine industry and electro-machine industry depending on the grade of the machinery and value of the transaction | |
| Repayment | up to 5 years |
| Interest rate | 7% p.a. |
| Advance payment | 15% |
| Grace period | 1 year |



2. Individual machines, accessories and
   plants from machine industry, electro
   -machine industry and telecommunica-
   tions depending on the grade of the
   machinery and the value of the tran-
   saction

   Repayment                                    up to 7 years
   Interest rate                                6,5% p.a.
   Advance payment                              10%
   Grace period                                 1 year

3. Ships and other vessels, locomotives
   and products for special purpose de-
   pending on the value of the transaction

   Repayment                                    up to 10 years
   Interest rate                                6,5% p.a.
   Advance payment                              10%
   Grace period                                 2 years

4. Complete energy, industrial, agricul-
   tural, agroindustrial and other plants
   /including the deliveries of the parent
   erd within the agricultural and agro-
   industrial plants/ depending on share
   of the equipment exported and the value
   of the transaction

   Repayment                                    up to 10 years
   Interest rate                                6,5% p.a.
   Advance payment                              10%
   Grace period                                 2 years

5. Investment works depending on share
   of the exported equipment and
   value of the transaction



| Repayment | up to 10 years |
| Interest rate | 5,5% p.a. |
| Advance payment | 10% |
| Grace period | 2 years |

6. Research work, studies and projects
   /if not within the complete facilities
   and investment works/ depending on the
   value of transaction

| Repayment | up to 5 years |
| Interest rate | 7% p.a. |
| Advance payment | 15% |
| Grace period | 1 year |

6.2. Partial deliveries shall be financed according to the
conditions of this Agreement provided that they are not less
than US$ 25.000.- /twenty five thousand US dollars only/.

6.3. Credit repayment shall commence from the date of delivery
under each contract on goods - equipment, and for contracts
on delivery of complete plants from the date of putting into
operation, provided that the first instalment shall become due
12 and 24 months respectively from the last delivery, i.e. after
putting the plant into operation, each following instalment to
become due six months after the previous one.

6.4. The interest shall accrue from each date of delivery of goods
or services rendered and shall be calculated as per Article 5
of this Agreement.

Article 7.

PROCEDURE

7.1. The funds under this credit shall not be available prior to
the fulfilment of the following conditions:

a/ Udružena Banka shall:
   - provide to the Bank the approval for each such
     contract in the form of the Annex "B"

      - receive an US$ down payment not less than 10% of the
        value of the contract for account of the Supplier.

  b/ The Bank shall:

      - submit to Udružena Banka a request for the inclusion into
        the Credit Agreement in the form of the Annex "A";

      - submit to Udružena Banka Notes pursuant to Article 3 of this
        Agreement in the form of the Annex "C" relative to the
        respective contract together with the Letter of Instructions.

7.2. The Bank shall open with Udružena Banka an irrevocable letter
    of credit for not less than 10% of the value of contract,
    authorising Udružena Banka to disburse to the Yugoslav Exporter
    the cash amount not less than 10% of the value of contract
    with reimbursement with a first-class International bank
    and debiting the account with the remainder of the value not
    higher than 90% as per the Article 6 of this Agreement.

## Article 8.

### PAYMENT OF NOTES

8.1. The Bank shall, on the due date, pay the respective principal
    and interest.

8.2. Should the amount of interest or principal under any Note has
    not been paid on its due date, the Bank shall pay on demand
    the additional interest on such unpaid amounts at a rate of
    4% per annum, calculated from the due date of payment of
    principal or interest to the date of receipt of such amount
    by Udružena Banka.

8.3. The Bank's obligation to pay principal under any Note or to
    pay the interest under any Note on the respective



due date, is not subject to the performance of the
approved contract by the Supplier, and does not affect
any Buyer's request against the Supplier.

## Article 9.

### PREPAYMENT OF NOTES

9.1. The Bank may, at its option, pay to Udružena Banka principal
under any Note prior to its due date and Udružena Banka
shall receive payment under such Note with all the in-
terest accrued until the date of receipt of payment in
US$ in Beograd, provided that on the date of payment
all amounts of due principal and interest have been paid
and that the Bank has notified in writing Udružena Banka
30 days prior to the intended prepayment of the Note.

## Article 10.

### TERMINATION OF THE CONTRACT

10.01. Should any contract be terminated by the Buyer or the
Supplier in compliance with any provision of this
Agreement and should the amount to be paid to the
Supplier by the Buyer has been agreed both by the
Supplier and the Buyer, in confirmation thereof the
report signed by the Supplier and the Buyer shall be
submitted both to the Bank and Udružena Banka.

10.02. Regardless the provisions under the previous item of
this Article, should the Supplier or the Buyer want or
fail to reach an agreement on the amount to be paid to
the Supplier, the dispute shall be settled by the
Arbitration in accordance with the conditions of such
contract.



## Article 11.

## PAYMENT UPON ARBITRATION AWARD

11.01. Should the Supplier or the Buyer want to settle the
dispute by the Arbitration as per the conditions thereof
the Supplier or the Buyer shall immediately notify Udru-
žana Banka on their intention to commence the Arbitration
in Arbitration court or that the respective Arbitration
procedure has been brought in the Arbitration court.

11.02. Udružena Banka shall promptly notify the Bank that the
Arbitration has been commenced in connection with rela-
tive contract.

11.03. Udružena Banka shall debit the account of the approved
contract under Article 4 of this Agreement on the grounds
of the authentic copy of the Arbitration award and the
Supplier's Invoice covering the amount   due for Yugoslav
goods.

11.04. Should the Arbitration be suspended, the Buyer or the
Supplier shall notify Udružena Banka thereof.

11.05. The Arbitration award shall be binding upon the Bank
and Udružena Banka.

## Article 12.

## EVENTS OF DEFAULT

12.01. The occurence of any of the following events shall be
considered a failure by the Bank:

a/ if the Bank fails to pay in Beograd the USD amount
representing:



- principal under any Note being released pursuant
  to the provisions of this Agreement,
  or
- interest accrued under any Note, or
- any amount of interest on any account under the
  approved contract, or
- interest due in accordance with the provisions
  of Article 5 of this Agreement.

12.02. Udružena Banka shall notify the Bank in writting on
the occurence of any event of default and if the Bank
fails to remedy the notified default within 30 days
period, from the date of Udružena Banka letter, Udru-
žena Banka may declare, at its own option:

a/ that the utilization of outstanding amount of
   credit is suspended, and
b/ that all the outstanding amounts are forthwith due
   and payable in whole.

## Article 13.

## AMENDMENTS TO THE CONTRACT

13.01. The obligation of Udružena Banka to make the credit
funds available shall be terminated should the approved
contracts be amended without the Udružena Banka approval.

13.02. The provisions of the previous paragraph should not
apply to amendments made in the technical specification.

## Article 14.

## JURISDICTION

14.01. All disputes arising out of this Agreement shall
finally be settled according to the Reconciliation
and Arbitration Rules of the International Chamber

- 12 -

of Commerce in Paris by one or more arbitrators appointed
in accordance with the Rules.

14.02. The Arbitration shall be held in Paris and shall be
governed under the material law of France.


## Article 15.

## COUNTERPARTS

15.01. This Agreement is executed in 4 identical counterparts
in English, two counterparts for each party hereto and the
Agreement shall become effective upon its registration
with the competent authorities both in Yugoslavia and
Nicaragua.


Beograd,

THE CENTRAL BANK
OF NICARAGUA

UDRUŽENA BEOGRADSKA BANKA
BEOGRAD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INEX-INTEREXPORT BELGRADE,** ) | |
| **14 OCTOBER KRUSEVAC, IMT AD** ) | |
| **BELGRADE, DP FAP FAMOS, AND MFK** ) | |
| **CORPORATION** ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:07CV00638 (RBW) |
| ) | |
| v. ) | |
| ) | |
| **THE REPUBLIC OF NICARAGUA AND** ) | |
| **BANCO CENTRAL DE NICARAGUA** ) | |
| ) | |
| Defendants. ) | |
| ) | |

<u>**PROPOSED ORDER GRANTING MOTION TO DISMISS THE COMPLAINT**</u>

Upon consideration of the Defendants' Motion to Dismiss the Complaint; the opposition

thereto; any reply; the accompanying exhibits; and for good cause shown, it is, on this _____ day

of _____, 2007, hereby:

ORDERED that the Defendants' motion is granted; and it is hereby

FURTHER ORDERED that the Complaint is dismissed.

_____
Reggie B. Walton
United States District Judge

## <u>List of Persons to be Notified (LCvR 7(k))</u>

Matthew D. Slater (D.C. Bar # 386986)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801
mslater@cgsh.com
Telephone:  (202) 974-1500
Facsimile:  (202) 974-1999

Jonathan I. Blackman
Christopher P. Moore
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999
Attorneys for the Defendants The Republic of Nicaragua and Banco Central de Nicaragua

Philip M. Musolino
Musolino & Dessel
1615 L Street, N.W., Suite 440
Washington, D.C. 20036
pmusolino@musolinoanddessel.com
Attorney for the Plaintiffs Inex-Interexport Belgrade, 14 October Krusevac, IMT AD Belgrade,
DP FAP Famos Belgrade and MFK Corporation Ltd.

Sylvia J. Rolinski
Danielle M. Espinet
Rolinski & Suarez, LLC
14915 River Road
Potomac, Maryland 20854
srolinski@rolinski.com
Attorney for the Plaintiffs Inex-Interexport Belgrade, 14 October Krusevac, IMT AD Belgrade,
DP FAP Famos Belgrade and MFK Corporation Ltd.